SINGER CASHMAN LLP
  Benjamin L. Singer (Bar. No. 264295)
  bsinger@singercashman.com
  Evan N. Budaj (Bar No. 271213)
  ebudaj@singercashman.com
505 Montgomery Street, Suite 1100
San Francisco, CA  94111
Telephone:  (415) 500-6080
Facsimile:  (415) 500-6080

*Attorneys for Plaintiff Software Research, Inc.*

GOODWIN PROCTER LLP
  Darryl M. Woo (Bar No. 100513)
  dwoo@goodwinlaw.com
  Abdul Abdullahi (Bar No. 296272)
  aabdullahi@goodwinlaw.com
  Kelsey Middleton (Bar No. 332884)
  kmiddleton@goodwinlaw.com
3 Embarcadero Center
San Francisco, California 94111
Telephone:  (415) 733-6068
Facsimile:  (415) 358-1038

*Attorneys for Defendant BrowserStack, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SOFTWARE RESEARCH, INC., | CASE NO. 4:21-CV-8124-JST |
| Plaintiff, | **JOINT CASE MANAGEMENT STATEMENT AND FED. R. CIV. P. 26(F) REPORT** |
| v. | |
| BROWSERSTACK, INC., and DOES 1 through 10, | Date Filed:            February 22, 2022<br>Rule 26(f) Conf. Date: February 08, 2022<br>Initial CMC Date:      March 01, 2022<br>Time:                  02:00 P.M.<br>Courtroom:             Courtroom 6, 2nd Floor |
| Defendants. | Judge:                 Hon. Jon S. Tigar<br>Trial Date:            None set |

Plaintiff Software Research, Inc. ("Plaintiff" or "SRI") and Defendant BrowserStack, Inc. ("Defendant" or "BrowserStack") (collectively, "the Parties") submit this Joint Case Management Statement and Fed. R. Civ. P. 26(f) Report, pursuant to the Court's Order Setting Initial Case Management Conference ("CMC") and ADR Deadlines; Standing Order for All Judges of the Northern District of California; Federal Rule of Civil Procedure 26(f); and Civil Local Rule 16-9.

1. **JURISDICTION & SERVICE**

This is an action for pecuniary and injunctive relief for Defendants' infringement of at least certain claims of United States Patent Nos. 7,757,175; 8,327,271; 8,392,890; 8,495,585; 8,650,493; 8,984,491; and 10,489,286 (collectively, the "Asserted Patents") arising under the patent laws of the United States, 35 U.S.C. § 1, *et seq*. (*See generally* D.I. 1.)  This Court has subject matter jurisdiction over Plaintiff's patent claims pursuant to 28 U.S.C. §§ 1331 and 1338(a).

SRI served Defendant on or about November 24, 2021.  (*See* D.I. 14.)  While the true identities of Defendants Does 1 through 10, inclusive, are presently unknown to SRI, SRI is informed and believes that such fictionally named Doe Defendants are directors, officers, employees, representatives, and/or agents of Defendants who participated and/or are currently participating in Defendants' infringement.  SRI will seek leave to amend its complaint to name such individuals when their true identities become known through discovery or further investigation.

No issues exist regarding personal jurisdiction or venue.

2. **FACTS**

SRI's Position:

As the global economy has moved away from traditional brick and mortar business and into the digital age, a company's fortunes can rise and fall with the functionality and performance of its websites.  An enterprise can lose millions in revenue if its website is down even briefly, its shopping cart or checkout processes are malfunctioning, or its pages fall victim to any of a number of other glitches arising from anything from simple mistake to sophisticated malware.  That internet infrastructure, programming languages, and other website technology continue to grow by leaps and bounds at an ever-increasing pace makes identifying performance issues—already a tricky exercise—more complicated virtually by the day.

SRI, a San Francisco tech company formed in 1978 by Edward F. Miller, Ph.D., exists to develop, refine, and commercialize website performance and functionality testing solutions that can keep up with the relentless advance of internet technology. In the decades since founding SRI, Dr. Miller has personally conceived of, developed, and patented a number of revolutionary innovations that dramatically advanced the start of the art of website performance testing. He is considered by many as a luminary in the field.

The Asserted Patents issued to Dr. Miller (with SRI as his assignee) only after the United States Patent Office undertook a rigorous review of the hundreds of pieces of prior art cited in Dr. Miller's applications. Further confirming the significance of SRI's intellectual property as foundational to the modern website testing industry, the Asserted Patents have been forward-cited approximately 200 times since issuance.

Thousands of customers—including Google, American Express, Intel, Microsoft, Cisco, IBM, Lockheed Martin, Princeton University, and Verizon—have purchased and employed SRI's offerings embodying one or more of the Asserted Patents, including but not limited to eValid™, in order to ensure that their websites function properly and continue to generate revenue. At its peak, SRI generated millions in annual revenues. But since that time, rampant infringement has decimated SRI's business, leaving SRI with no choice but to enforce its right to keep others from using Dr. Miller's inventions to compete against SRI.

Defendants offer website testing products, such as its Automate, Percy, and App Automate products, that infringe each of the Asserted Patents.

Defendants' Position:

BrowserStack is a privately held company based primarily outside the United States that was founded in India in 2011 by its two founders, Ritesh Arora and Nakul Aggrawal. Arora and Aggrawal met while studying computer science at IIT Bombay and later co-founded QuarkRank Pvt. Ltd., one of the first artificial intelligence powered sentient agents, and Downcase Consulting Co., a global consulting company. While building web-related content, the founders because frustrated with the lack of software testing tools for such content. Crafting an effective solution to this problem was

the impetus for independently creating and developing the technology behind BrowserStack's software testing products.

BrowserStack's software testing products consist of: Live, Automate, and Percy for testing websites; and App Live and App Automate for testing mobile applications ("apps"). The technology underlying these products was independently developed through countless hours of labor and a commitment to providing effective, reliable web testing solutions for developers. This effort and innovation has resulted in BrowserStack becoming a leader in the software testing industry, serving more than four million developers and more than fifty thousand customers worldwide.

BrowserStack has offices in three locations: an office in San Francisco, California, and two headquarters abroad, in Mumbai, India, and Dublin, Ireland. BrowserStack operates mostly abroad. The majority of its marketing, sales, operations, IT, engineering & support teams are based in India. Almost all product demonstrations are done by its customer engineering team in India. Nearly all contracts are negotiated and signed through authorized mechanisms outside the U.S. Delivery of services is provided from India including user IDs and passwords created there, and invoicing is prepared, maintained, and recorded in India. Its data centers are located around the globe in India, Australia, and Europe. Accordingly, a significant portion of BrowserStack's revenue is exclusively derived from extraterritorial sales of its software testing products, all of which are also developed and manufactured extraterritorially.

Contrary to Plaintiff's allegations, BrowserStack respects the intellectual property rights of others and has not infringed any of SRI's intellectual property, including the Asserted Patents.

**3.     LEGAL ISSUES**

The Parties anticipate that the key factual and legal issues in this action will be:

   A.   The meaning and scope of the terms recited in the claims of the Asserted Patents;

   B.   Whether Defendants have directly infringed, either literally or under the doctrine of equivalents, any claim of the Asserted Patents;

   C.   Whether Defendants have induced others to infringe and/or contributed to others' infringement of the Asserted Patents;

   D.   Whether Defendants' infringement has been willful;

  E. Whether Plaintiff is entitled to injunctive relief;

  F. The amount and type of damages awardable to Plaintiff;

  G. Whether Plaintiff is entitled to attorney's fees pursuant to 35 U.S.C. § 285;

  H. Whether Plaintiff's Asserted Patents are valid;

  I. Whether Defendant's allegedly infringing products that are manufactured, offered for sale, and sold extraterritorially constitute "sales" within the reach of U.S. patent laws; and

  J. The amount and type of damages awardable to Plaintiff.

**4. MOTIONS**

There are no prior or pending motions. The Parties anticipate filing any necessary discovery motions, motions for summary judgment regarding infringement and validity, and pre-trial motions as appropriate.

**5. AMENDMENT OF PLEADINGS**

The Parties propose June 1, 2022, for the deadline to amend the pleadings.

**6. EVIDENCE PRESERVATION**

The Parties are aware of document preservation obligations and have taken steps to comply with those obligations. The Parties certify that they have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information ("ESI Guidelines"). The Parties also confirm that they met and conferred pursuant to Fed. R. Civ. P. 26(f) on February 08, 2022, between 9:30 A.M. and 10:30 A.M., and that each of them has implemented a litigation hold.

**7. DISCLOSURES**

The Parties will make their initial disclosures pursuant to Rule 26(a)(1) consistent with the proposed schedule below.

**8. DISCOVERY**

The Parties anticipate discovery relevant to infringement, willfulness, damages, validity, and enforceability.

The Parties suggest that the timing of and limits on discovery be governed by the Federal Rules of Civil Procedure and the Local Rules of this Court, with the following exceptions:

1. **Method of Service**: The Parties consent to, and agree to accept, service of all documents, discovery requests and responses, and process via electronics service pursuant to FRCP 5(b)(2)(E), so long as such service is sent to:
   - for service on SRI: SRI.service@singercashman.com
   - for service on BrowserStack: its counsel of record

2. **Protective order**: The Parties will meet and confer on a proposed Stipulated Protective Order, which they will submit to the Court.

3. **Depositions**: The Parties agree that all depositions of the Parties or officers, employees, or agents thereof, will take place in this judicial district or by remote video conference.

4. **Source code review**:

   SRI's position: Source code review, if necessary in this case, should take place within this judicial district, for example at counsels' or the parties' offices in this judicial district.

   BrowserStack's position: BrowserStack has not rejected SRI's proposal, but its counsel is still in the process of seeking its client's permission whether it will agree to allow its confidential source code to leave India.

9. **CLASS ACTIONS**

This is not a class action.

10. **RELATED CASES**

There are no related cases or proceedings.

11. **RELIEF**

SRI's Position:

SRI seeks monetary damages for Defendants' past and present infringement adequate to compensate it for Defendants' infringement, as well as a permanent injunction preventing Defendants from continuing those activities. With respect to the monetary damages, SRI is seeking recovery in amount equal to its lost profits, plus Defendants' ill-gotten gains. SRI will be able to state those amounts with precision after it has had discovery of Defendants' financial and sales records. In the

1  alternative and in any event, SRI seeks recovery in an amount no less than a reasonable royalty for
2  the use made of the invention by Defendants, together with interest and costs as fixed by the court,
3  pursuant to 35 U.S.C. § 284.
4        As discovery has not yet begun, at this time SRI is not in a position to provide even a good-
5  faith estimate as to the potential damages in this matter.  SRI will be able to provide a reasonable,
6  good-faith estimate thereof following Defendants' fulsome answers to SRI's upcoming Rule 33 and
7  34 discovery requests.
8        Subject to the foregoing, a reasonable royalty in this case may be in the range of up to 10% of
9  Defendants' relevant revenues, plus a 10% running royalty for future infringement.  SRI cannot
10 provide even an estimate as to its lost profits (which would be based on factors including but not
11 limited to Defendants' unit sales) at this time.
12       Defendants are not seeking any damages from Plaintiff.
13 <u>Defendants' Position</u>:
14       BrowserStack seeks declarations that it does not infringe any valid claims of the Asserted
15 Patents and that each of the claims of the Asserted Patents is invalid, unenforceable, or both.
16 BrowserStack does not seek monetary damages at this time, but seeks a judgment that Plaintiff
17 recover nothing by way of its Complaint because BrowserStack did not infringe any valid claims of
18 the Asserted Patents.
19       BrowserStack asserts that any recoverable damages be limited to those within the reach of
20 U.S. patent laws, given that most of BrowserStack's activities take place outside the U.S.
21 **12.   <u>SETTLEMENT AND ADR</u>**
22       The Parties are currently engaged in settlement discussions.  In the event that the Parties are
23 unable to reach a settlement on their own, both sides have agreed that private mediation would be
24 appropriate.
25 **13.   <u>CONSENT TO MAGISTRATE JUDGE FOR ALL PURPOSES</u>**
26       At least one of the Parties declines to proceed for all purposes before a magistrate judge.
27 **14.   <u>OTHER REFERENCES</u>**
28

The Parties do not believe that this action is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

**15. NARROWING OF ISSUES**

The Parties have not yet discussed narrowing the issues in the case, but plan to initiate such a discussion as discovery progresses.

**16. EXPEDITED TRIAL PROCEDURE**

The Parties do not believe that this action could be handled under the Expedited Trial Procedure of General Order 64.

**17. SCHEDULING**

The Parties jointly propose the schedule set forth below based on the Local Patent Rules, with slight adjustments for holidays. For dates after the Claim Construction Hearing, the Parties propose that the Court set a further CMC when it issues its claim construction order. At that further CMC, the Parties can provide their proposals for the schedule for the remainder of the case.

| Event | Dates |
| --- | --- |
| Deadline for Initial Disclosures | February 25, 2022 |
| Deadline for Plaintiff's disclosure of Asserted Claims and Infringement Contentions | April 18, 2022 |
| Deadline for disclosure of Defendant's Invalidity Contentions | June 02, 2022, pursuant to P.L.R. 3-3 |
| Deadline for disclosure of Plaintiff's Damages Contentions | July 22, 2022, pursuant to P.L.R. 3-8 |
| Deadline for disclosures of Defendant's Responsive Damages Contentions | August 21, 2022, pursuant to P.L.R. 3-9 |
| Deadline to complete ADR | 90 days from issuance of ADR Referral Order |
| Exchange of proposed claim terms for construction | June 16, 2022, pursuant to P.L.R. 4-1 |
| Exchange of preliminary claim constructions and extrinsic evidence | July 07, 2022, pursuant to P.L.R. 4-2 |

| Event | Dates |
|---|---|
| Deadline to seek leave to amend pleadings, add new Parties, bring new cases, bring third party claims or cross claims | June 01, 2022 |
| Joint Claim Construction Chart and Prehearing Statement | August 01, 2022, pursuant to P.L.R. 4-3 |
| Claim Construction Discovery Closes | August 31, 2022, pursuant to P.L.R. 4-4 |
| Plaintiff's Claim Construction Brief Due | September 22, 2022, pursuant to P.L.R. 4-5(a) |
| Defendant's Claim Construction Opposition Due | October 13, 2022, pursuant to P.L.R. 4-5(b) |
| Plaintiff's Claim Construction Reply Brief due | October 27, 2022, pursuant to P.L.R. 4-5(c) |
| Claim Construction Hearing | November 10, 2022, pursuant to P.L.R. 4-6; or as soon thereafter as convenient for the Court |
| Fact Discovery Cut-Off | BrowserStack: To be determined at Case Management Conference following issuance of claim construction order. <br> SRI: December 2, 2022 |
| Disclosure of Opening Expert Report(s) | BrowserStack: To be determined at Case Management Conference following issuance of claim construction order. <br> SRI: January 19, 2023 |
| Disclosure of Rebuttal Expert Report(s) | BrowserStack: To be determined at Case Management Conference following issuance of claim construction order <br> SRI: February 16, 2023 |
| Disclosure of Reply Expert Report(s) | BrowerStack: To be determined at Case Management Conference following issuance of claim construction order. <br> SRI: March 9, 2023 |

| Event | Dates |
|---|---|
| Expert Discovery Closes | BrowserStack: To be determined at Case Management Conference following issuance of claim construction order.<br><br>SRI: March 31, 2023 |
| Last Day to File Dispositive Motions | BrowserStack: To be determined at Case Management Conference following issuance of claim construction order.<br><br>SRI: April 13, 2023 |
| Trial | BrowserStack: To be determined at Case Management Conference following issuance of claim construction order.<br><br>June 12, 2023, or as soon thereafter as convenient for the Court |

**18.   FORMAT OF TECHNOLOGY TUTORIAL AND CLAIM CONSTRUCTION**

To the extent the Court believes a technology tutorial would be helpful in deciding the issues to be presented at claim construction, the Parties jointly propose that such a tutorial be given by counsel from both sides at a time convenient for the Court, such as one week or one day prior to the claim construction hearing, on the morning of the claim construction hearing, or any other time convenient for the Court.

The Parties jointly propose that no live testimony will be given at the claim construction hearing.  The Parties further jointly propose that the claim construction hearing should proceed term-by-term, with each side presenting its position on each term before proceeding to the next term, and that the Parties will alternate which side will begin arguing each term.

**19.   TRIAL**

Both Parties have demanded trial by jury for all issues so triable.  Assuming full court days, the Parties estimate trial of this matter would require approximately seven (7) court days.

**20.   DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS**

Plaintiff has disclosed non-party interested entities pursuant to Fed. R. Civ. P. 7.1 and Civil L.R. 3-15. *See* Dkt. No. 6.

Defendant has disclosed non-party interested entities pursuant to Fed. R. Civ. P. 7.1 and Civil L.R. 3-15. *See* Dkt. No. 23.

**21.     PROFESSIONAL CONDUCT**

The Parties' counsel of record have reviewed the Guidelines for Professional Conduct for the Northern District of California.

**22.     OTHER MATTERS AFFECTING DISPOSITION OF THIS MATTER**

At this time, there are no other matters to address that may facilitate the just, speedy, and inexpensive disposition of this matter.

Respectfully submitted,

SINGER CASHMAN LLP

Date:  February 22, 2022       By:   /s/ Evan Budaj
                                     Benjamin L. Singer
                                     Evan Budaj
                                     *Attorneys for Plaintiff Software Research, Inc.*

GOODWIN PROCTER LLP

Date:  February 22, 2022       By:   /s/ Darryl M. Woo
                                     Darryl M. Woo
                                     Abdul Abdullahi
                                     Kelsey Middleton
                                     *Attorneys for Defendant BrowserStack, Inc.*

**Attestation Regarding Signatures**

I, Evan Budaj, attest that all signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

Date:  February 22, 2022            /s/ Evan Budaj
                                     Evan Budaj